IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MICHAEL E. FEAGIN,                    )
                                      )
           Plaintiff,                 )
                                      )
    v.                                )          CASE NO. 2:10-CV-252-MHT
                                      )                   [WO]
                                      )
SOUTHERN HEALTH PARTNERS, et al.,     )
                                      )
           Defendants.                )

# RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Michael E. Feagin ["Feagin"], an indigent inmate, challenging the adequacy of medical treatment provided to him for diabetes and diabetes-related complications during his confinement at the Covington County Jail from December 7, 2009 until March 17, 2010.  *Complaint - Doc. No. 1* at 5.  Feagin names Southern Health Partners, the contract medical care provider for the Covington County Jail, Dr. Millard McWhorter, a physician at the jail, and Annette Cain and Dianne Williams, nurses employed by the jail, as defendants in this cause of action.[1]

The defendants filed a special report and relevant supporting evidentiary materials, including affidavits and medical records, addressing Feagin's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to construe this report as a motion for

---

[1]Feagin incorrectly identifies Dr. McWhorter as Willard McWhorter and identifies nurse Williams merely as nurse Diane W.  For purposes of this Recommendation, the court will utilize the proper identities of the defendants.

summary judgment.  *Order of April 1, 2010 - Doc. No. 13*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision ©, changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*. "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of [jail medical personnel].  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Feagin is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the

evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the

4

case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material fact, nonmoving party must produce evidence such that reasonable trier of fact could return a

verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Feagin fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## III. DISCUSSION[3]

### A. Suit Against Defendants in Their Official Capacities - Absolute Immunity

To the extent Feagin sues the defendants in their official capacities, they are immune from monetary damages.[4] Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official

---

[3]Although the defendants present a defense based on Feagin's failure to exhaust the administrative remedy provided at the Covington County Jail, Feagin asserts the medical care provider has not implemented a grievance procedure and the inmate handbook does not provide for the filing of grievances with respect to medical treatment. *Plaintiff's Response - Doc. No. 19* at 2; *Plaintiff's Exhibit D (Inmate Handbook) - Doc. No. 19-4* at 4 ("If at anytime you feel that an officer has mistreated you, or implemented an excessive punishment, you are encouraged to fill out a grievance on that officer."). Feagin filed a grievance addressed to a captain at the jail as required by the inmate handbook referencing an incident of elevated blood pressure on March 25, 2010. *Defendants' Exhibit C to the Affidavit of Dennis Meeks - Doc. No. 11-3* at 10. The captain referred the grievance to medical personnel for a response. Based on the foregoing and as the plaintiff is entitled to no relief, this court will address the merits of the plaintiff's claims for relief.

[4]Under all facets of Alabama law, a county sheriff, his jailers and medical staff act as state officers "when supervising inmates and otherwise operating the county jails." *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff and, by extension, his staff as members of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (county sheriff is executive officer of the State).

6

may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### B.  Deliberate Indifference to Medical Needs[5]

Feagin alleges the defendants acted with deliberate indifference to various medical needs resulting from his diabetes.  Specifically, Feagin complains the defendants failed to (i) properly

---

[5]It appears the alleged denial of medical treatment which forms the basis of the instant complaint occurred during Feagin's confinement as a detainee on felony charges pending the revocation of his probation.  Nevertheless, regardless of Feagin's status in the jail, the applicable standard of review remains the same.  *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.... However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492 (1986) (For analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.); *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

monitor his blood sugar, cholesterol and blood pressure, (ii) prescribe appropriate medication for treatment of his conditions, and (iii) order an appropriate treatment plan. The defendants adamantly deny they acted with deliberate indifference to Feagin's medical conditions and, instead, maintain they provided Feagin with appropriate treatment for his conditions.

The assertions made by Feagin fail to establish deliberate indifference as the medical records indicate the defendants provided treatment to Feagin based on his medical history and their evaluations of his conditions. These records establish that upon his entry into the Covington County Jail on December 7, 2009 jail medical personnel immediately examined Feagin and prescribed medications for treatment of his medical issues. The medical records further demonstrate that medical personnel routinely examined Feagin regarding his complaints of low blood sugar, high blood sugar, chest pains and high cholesterol, continuously adjusted his medication, performed twice daily then weekly tests of his blood sugar levels and routinely checked his vital signs.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal

quotations omitted) (Under *Estelle*, plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment." *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989). In order to properly establish "deliberate indifference to [a] serious medical need ..., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009).   When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner).   Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).   Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a

> prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.").  Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."  *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because

their opinions concerning medical treatment conflict with that of the inmate-patient). Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

Upon his entry into the Covington County Jail in December of 2009, medical personnel performed a medical screening of Feagin. After obtaining information regarding Feagin's recent treatment by free-world physicians, Dr. McWhorter prescribed medication he deemed appropriate in treating the conditions presented by Feagin. Medical personnel also performed checks of Feagin's blood sugar levels two times per day until his blood sugars stabilized in late January of 2010. At this time, medical personnel administered weekly blood sugar tests on Feagin. The probative evidentiary materials before the court further demonstrate that the jail's medical staff routinely examined Feagin when he presented with complaints, thoroughly evaluated his complaints and provided treatment as they deemed medically necessary. Thus, Feagin received medical treatment for his diabetes and related conditions upon his initial intake and throughout his confinement in the Covington County Jail in the form of physical examinations, medical evaluations, prescription medication and performance of various tests.

The affidavit filed by defendant Cain addresses the claims before this court, in pertinent part, as follows:

> The plaintiff was booked into the Covington County Jail on December 7, 2009. Later that day, I completed a medical staff screening form, wherein the plaintiff stated that he had been treated for diabetes, high cholesterol and ulcers and was taking 70/30 insulin twice a day, Humulin R insulin on a sliding scale as needed, Glucophage 850 mg twice a day and Glucotrol (Glipizide) 20 mg twice a day. During his initial screening, the plaintiff indicated that he was under the

11

care of Dr. Johnson and Dr. McWhorter and that he was filling his prescriptions at City Drug, Darby's and Wal Mart. The plaintiff's vital signs were checked, and his blood pressure was 110/74, which is normal.

After the plaintiff's screening, I followed up with Dr. Johnson and Dr. McWhorter to verify the treatment provided to the plaintiff. Dr. Johnson's nurse indicated that the plaintiff had been released as a patient on August 20, 2009, due to non-compliance; specifically, Dr. Johnson had tested the plaintiff's glucose level and the plaintiff had not been taking his insulin. The plaintiff was given prescriptions by Dr. Johnson for Zocor, Glucophage, Soma, Lortab and Humulin R. On August 25, 2009, he had seen Dr. McWhorter outside the jail at Dr. McWhorter's private office, and Dr. McWhorter had prescribed Neurontin and Ultram. After contacting the pharmacies at City Drug, Wal Mart and Darby's, I determined that the plaintiff filled his Lortab, Soma and Neurontin prescriptions as well as filling a prescription for a 90 day supply of Glipizide, a blood sugar medication similar to Glucophage. The plaintiff had not filled his prescriptions for Glucophage, Zocor or Humulin R, and, as such, it did not appear that he had taken these medications since August 2009.

On December 9, 2009, Dr. McWhorter entered an Order, prescribing Glipizide 10 mg. twice a day and Humulin R insulin on a sliding scare twice a day for the plaintiff's diabetes. Pursuant to Dr. McWhorter's protocol, Humulin R was only to be administered if needed to control high blood sugar levels. Thereafter, from December 9, 2010 through late January 2010, a blood sugar flow sheet was completed twice daily on the plaintiff, documenting his blood sugar levels twice a day and providing insulin as needed. The blood sugar flow sheet is included in the medical records [contained in the exhibits before the court].

On December 19, 2009, Dianne Williams, LPN completed a history and physical of the plaintiff. The plaintiff's blood pressure was 110/70, and he gave a history of diabetes and hyperlipidemia. In his medical history, the plaintiff stated "none" when asked if he was on any current medications.

On January 8, 2010, plaintiff completed a sick call slip, complaining primarily of a red irritation on the bottom of his right big toe and athlete's foot. He also complained of chest pain in his upper left chest area, high cholesterol and stated that he thought he needed Zocor for his lipids and Glucophage for his diabetes. In response to this sick call, on January 9, 2010, the plaintiff was seen by Dianne Williams, LPN, and Nurse Williams examined his feet and no fungus was noted. After examining the plaintiff, Nurse Williams documented that no treatment was indicated.

On January 20, 2010, the plaintiff completed a sick call form, complaining of chest pain and stating that he had high cholesterol. On the same day, he was seen by Dr. McWhorter, who noted that the inmate was complaining of mid sternal chest pain and observed that the plaintiff's blood sugars had been fluctuating. Dr. McWhorter assessed the plaintiff with non insulin dependent

diabetes and ordered that the plaintiff receive Glucophage 1000 mg. twice a day in addition to the Glipizide he was already receiving. With respect to the plaintiff's complaints of chest pain, Dr. McWhorter told the plaintiff that it was Dr. McWhorter's opinion that the chest complaint was muscular and not cardiovascular, and that there was no treatment indicated. The plaintiff's blood pressure was 136/90, which is within normal limits.

Since January 20, 2010, the plaintiff has completed no further sick call slips with respect to chest pain.

In late January 2010, after the plaintiff's blood sugars began to stabilize, Dr. McWhorter directed me to scale back the plaintiff's blood sugar checks to once a week. From late January through early March, the plaintiff's blood sugars were checked weekly and they remained stable, never rising to the level that insulin was required.

On March 3, 2010, Dr. McWhorter entered a written Order that the plaintiff's blood sugar be checked every Friday. As of today [March 30, 2010], the plaintiff's last blood sugar check was this past Friday, March 26, 2010, and his blood sugar level was 112, which is within normal limits. The plaintiff's blood sugars have remained stable enough that insulin has not been required since January 26, 2010.

On March 25, 2010, the plaintiff completed a sick call slip, complaining of high blood pressure. In response to this complaint, I saw the plaintiff and checked his blood pressure, which read 122/86. 122/86 is within normal limits. That morning, prior to seeing the plaintiff, a correction officer related to me that the plaintiff had complained during the night that he thought he had high blood pressure. The plaintiff's blood [pressure] was taken on the automatic blood pressure machine [that night], which gave a reading of 166/106, which is slightly elevated. When I saw the plaintiff on March 25, 2010, I explained to him that the blood pressure machine will sometimes reach an amount that is higher than what would be reached if checked manually. I then manually checked the plaintiff's blood pressure and his reading was 122/86.

Since being incarcerated on December 7, 2009, the plaintiff has consistently registered normal blood pressure readings.

*Defendants' Exhibit 2 (Affidavit of Annette Cain, LPN) - Doc. No. 11-2* at 3-6; *Defendants' Exhibit 1 (Affidavit of Dr. Millard McWhorter) - Doc. No. 11-1* at 3-6 (same). The synopsis of treatment provided to Feagin as detailed by the defendants in their affidavits is supported by the medical records filed in this case, *Defendants' Exhibit A to the Affidavit of Nurse Cain - Doc. No. 11-2* at 9-39, and there is nothing before the court which undermines the validity of these

records.

Under the circumstances of this case, the court concludes the course of treatment undertaken by the defendants in addressing Feagin's diabetes, cholesterol, hypertension and chest pain did not violate his constitutional rights.  The medical care Feagin received was certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505.  The allegations presented by Feagin simply fail to establish deliberate indifference.  *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545-1546 (Whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground constitutional liability.  In addition, inmate's allegation prison physician did not diligently pursue alternative means of treating condition "did not 'rise beyond negligence'... to the level of deliberate indifference."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

It is undisputed Feagin received continuous medical care for his diabetes and other related conditions and evident the defendants rendered treatment to Feagin in accordance with their professional judgment.  Based on well settled law cited herein, Feagin's mere desire for different modes of medical treatment does not constitute deliberate indifference.  In addition, Feagin has

14

failed to present any evidence which indicates the defendants knew the manner in which they provided treatment created a substantial risk to his health and that with this knowledge consciously disregarded such risk.  The record is therefore devoid of evidence, significantly probative or otherwise, showing the defendants acted with deliberate indifference to Feagin's medical conditions.  Consequently, summary judgment is due to be granted in favor of the defendants.  *Carter*, 352 F.3d at 1350.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that **on or before August 27, 2012**, the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking

on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 13th day of August, 2012.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE